**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | |
|---|---|
| **GLAXOSMITHKLINE LLC**<br>5 Crescent Drive<br>Philadelphia, PA 19112<br><br>   Plaintiff,<br><br>v.<br><br>**DENISE BROOKS**<br>13120 Suncrest Avenue<br>Clarksburg, Maryland 20871<br>Montgomery County<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **CIVIL ACTION NO.**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF**

Plaintiff GlaxoSmithKline LLC ("GSK"), by and through its attorneys, files this Complaint for Emergency Injunctive Relief against Defendant Denise Brooks ("Defendant" or "Brooks") and alleges as follows:

**NATURE OF THE ACTION**

1. On January 13, 2022, Defendant Denise Brooks abruptly resigned from her employment as a GSK Quality Systems Lead, a position that gave her wide-ranging access to GSK's proprietary data, confidential methods, and highly sensitive trade secrets regarding: GSK's internal drug manufacturing processes; standard operating procedures; training programs; strategic business plans; and systems that ensure proper design, monitoring, and control of manufacturing processes and facilities in compliance with U.S. Food and Drug Administration ("FDA") regulations and similar regulations for ex-US markets for multiple GSK sites, including

data generated by those systems (collectively, "GSK Trade Secrets and Confidential Information"). Later on the same day that she resigned, Brooks used her access credentials to enter GSK's facility in Rockville, Maryland (the "Rockville Facility") and exchange her older GSK-issued laptop for a brand new GSK-issued laptop. As part of that exchange, Brooks had GSK information technology ("IT") personnel – who were unaware of her resignation – copy a wealth of GSK Trade Secrets and Confidential information from her prior laptop onto the new one. Shortly before her resignation and apparently in anticipation of it, Brooks also emailed to her personal email account additional GSK Trade Secrets and Confidential Information. Brooks has since ignored multiple requests to return GSK Trade Secrets and Confidential Information.

2. Brooks' unlawful possession of, transfer of, and potential to misuse GSK Trade Secrets and Confidential Information will irreparably harm GSK unless her conduct is enjoined by this Court. Accordingly, GSK seeks injunctive relief resulting from Brooks' willful misappropriation of GSK Trade Secrets and Confidential Information under the federal Defend Trade Secrets Act (18 U.S.C. § 1831 *et seq.*, "DTSA") and the Maryland Uniform Trade Secrets Act (Md. Code Ann., Com. Law § 11-1201 *et seq.*, "MUTSA"), Conversion, and Detinue/Replevin.

3. GSK and Brooks are parties to an arbitration agreement that is part of a GSK employee dispute resolution program described herein. The agreement expressly permits either party to seek a temporary restraining order and preliminary injunctive relief from a court "in aid of arbitration or to preserve or reinstate the status quo pending arbitration." Contemporaneously with seeking the instant emergency injunctive relief from this Court to prevent irreparable harm, GSK is pursuing its underlying claims in arbitration in accordance with the arbitration agreement.

**PARTIES**

4. Plaintiff GSK is a limited liability company organized under the laws of Delaware, with principal places of business at Crescent Drive, Philadelphia, Pennsylvania 19112, and Research Triangle Park, North Carolina 27709. The sole member of GSK is GlaxoSmithKline Holdings (Americas), Inc., a Delaware corporation with its principal place of business in Wilmington, Delaware. GSK, therefore, is a citizen of Delaware.

5. Defendant Brooks is a resident of Montgomery County, Maryland who, upon information and belief, currently resides in Clarksburg, Maryland.

**JURISDICTION AND VENUE**

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331. GSK asserts that Brooks has violated DTSA, a federal law establishing a civil cause of action for the misappropriation of trade secrets. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. GSK asserts that Brooks has violated MUTSA by the same conduct giving rise to GSK's DTSA claim. Brooks is additionally liable for common law Conversion and Detinue/Replevin arising from the same conduct.

7. This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. Specifically, GSK is a citizen of Delaware. Brooks is a resident of Maryland.

8. Venue is proper pursuant to 28 U.S.C. § 1391. Brooks is a resident of Montgomery County, Maryland. Further, GSK's claims arise from Brooks' conduct within this District.

**FACTS**

**A. Background on GSK**

9. GSK is a global healthcare company that engages in research and development,

manufacturing, and distribution of pharmaceuticals, vaccines, and other healthcare products.

10. GSK conducts biopharma manufacturing at the Rockville Facility.

11. To produce high-quality products and ensure compliance with governmental regulations, GSK has developed, implemented, and maintained standard manufacturing processes and procedures, which are intended for internal use only and subject to reasonable measures to protect their confidentiality from competitors and other persons, as well as proprietary manufacturing processes and instructions for the manufacture of drugs. GSK trains its employees on these processes, procedures, and instructions and considers them and related documents and data to consist of GSK Trade Secrets and Confidential Information.

12. GSK has made significant investments in GSK Trade Secrets and Confidential Information on a global scale for its exclusive benefit. GSK takes precautions to prevent GSK Trade Secrets and Confidential Information from falling into the hands of competitors and other persons who would use the information to their benefit and to GSK's detriment. *See* Declaration of Allen Moss, attached hereto as **Exhibit A.**

**B. Brooks' Employment with GSK**

13. GSK hired Brooks at its Rockville Facility in November 2006. She was a GSK employee until her resignation on January 13, 2022.

14. Due to the nature of her roles within GSK, Brooks had access to and possession of GSK Trade Secrets and Confidential Information, namely GSK's internal manufacturing processes; standard operating procedures; training programs; strategic business plans; and systems that ensure proper design, monitoring, and control of manufacturing processes and facilities in compliance with FDA regulations and similar regulations for ex-US markets for multiple GSK sites, including data generated by those systems. *See id.*

15. GSK's code of conduct obligates departing employees to return all GSK-owned equipment, including but not limited to laptops, smartphones, and other company-owned assets that could contain GSK Trade Secrets and Confidential Information. *See GSK, Our code of conduct,* attached hereto as **Exhibit B**.

16. Brooks' most recent position at GSK was Quality Systems Lead. Brooks' responsibilities in that position included, among other things, assessing and maintaining critical aspects of manufacturing operations across the company, primarily with respect to the creation and retention of sensitive and proprietary manufacturing data. She performed her duties remotely, but had access to the Rockville Facility.

17. On December 15, 2021, GSK launched an internal investigation into the propriety of payments to an external vendor that had been charged to Brooks' GSK-issued credit card and reimbursed by GSK. Brooks was aware of the investigation, and, at the time of Brooks' resignation, the investigation was ongoing.

18. The internal investigation was closed on January 27, 2022, concluding certain credit card charges by Brooks had not been authorized by GSK.

19. Brooks agreed to participate in GSK's Helping Employees Achieve Resolution of Workplace Concerns program (the "GSK HEAR Program"). The GSK HEAR Program, available to all full-time and part-time GSK employees and former employees, provides for the resolution of individual workplace concerns.

20. Employees participating in the GSK HEAR Program are bound by the HEAR Legal Agreement, which requires arbitration of claims relating to the employee's employment, terms and conditions of employment, or the termination of employment. Either party may "make application to a court for temporary or preliminary injunctive relief in aid of arbitration or to

preserve or reinstate the status quo pending arbitration." The HEAR Legal Agreement is attached hereto as **Exhibit C**.

### C. Brooks' Voluntary Separation from GSK

21. On the afternoon of January 12, 2022, Brooks coordinated via email with the Rockville Facility's IT department to pick up a new GSK-issued laptop computer. GSK IT personnel confirmed that Brooks would have to return the laptop then in her possession in order to obtain the new one. GSK IT personnel further informed her that if she did not pick up her new laptop before January 18, it would be returned to GSK's facility in Research Triangle Park.

22. All laptops issued to employees by GSK remain property of GSK.

23. Early on January 13, 2022, at approximately 7:52 AM, Brooks sent an email to her supervisor announcing her resignation, effective immediately. Brooks stated that she would be disconnecting her computer and returning all GSK equipment to the Rockville Facility security desk.

24. On January 13, 2022, at approximately 12:54 PM, Brooks used her access badge to gain entry to the main lobby of the Rockville Facility.

25. Ten minutes later, at approximately 1:05 PM, closed-circuit television cameras captured Brooks carrying several items outside of the Rockville Facility and walking in the direction of the parking lot. At 1:07 PM, Brooks reentered the main lobby, carrying nothing.

26. Promptly upon reentering the Rockville Facility, upon information and belief, Brooks visited the IT area in the facility and notified GSK IT personnel that she was exchanging her current GSK-issued laptop for a new GSK-issued laptop.

27. At the time that Brooks exchanged her laptop for a new one, IT personnel were as yet unaware of Brooks' resignation. As a result, GSK IT issued to Brooks a brand new Hewlett-

Packard HP ZBook Firefly 15-inch G8 Mobile Works laptop (the "ZBook").

28. For GSK laptops issued to employees, GSK utilizes Microsoft OneDrive, which is an online syncing, storage, and backup system that, among other things, permits file synchronization and sharing across electronic devices. GSK employees have OneDrive profiles that contain virtually all of the documents and data that GSK employees create, modify, and store in the performance of their duties, including but not limited to word processing files, data spreadsheets, portable document format ("PDF") files, visual media files, presentations, notes, and other files supported by software applications.

29. Consistent with standard process for issuing a new laptop to an employee, GSK IT personnel uploaded Brooks' OneDrive profile onto the ZBook, which created local copies on the ZBook of the same files that had been saved on the old laptop locally.

30. While exchanging her laptop, Brooks signed onto her GSK-owned Microsoft Outlook email account to confirm that it had been loaded onto the ZBook. By signing onto her Microsoft Outlook account from the ZBook, copies of Brooks' emails – including older emails and any emails that she received before termination of her access – were saved locally to the ZBook.

31. On the ZBook in her possession, Brooks remains able to access all locally-saved OneDrive files from her old laptop and emails that existed in her inbox when she last connected to GSK's email system. As a result, Brooks continues to possess and have access to GSK Trade Secrets and Confidential information.

32. Brooks left her old laptop in the IT area before exiting.

33. Brooks' access to GSK's IT system was cut off on January 13, 2022, at 2:26 PM.

**D. Brooks' Removal of GSK Trade Secrets and Confidential Information from the Rockville Facility**

34. After exchanging her laptop on January 13, 2022, closed-circuit television cameras captured Brooks exiting the Rockville Facility at approximately 1:33 PM with a ZBook laptop, an item appearing to be a thick book, a purse, and her access badge. (GSK is prepared to submit video files of the relevant surveillance footage to the Court.) Although Brooks has since denied retaining her ZBook, it was not otherwise returned to or found at the Rockville Facility. GSK therefore alleges that Brooks removed and retained its ZBook.

35. Shortly before her resignation, on January 11, 2022, and again on the day of her resignation, January 13, 2022, Brooks emailed documents containing GSK Trade Secrets and Confidential Information to her personal email address in violation of company policy.

36. On January 10, 11, 13, 15, and 17, 2022, Brooks transferred certain documents from her GSK-issued laptop onto an unknown external storage device and a Kingston USB drive. In addition to those storage devices, Brooks remains in possession of a GSK-issued smartphone that she had previously used to access GSK Trade Secrets and Confidential Information. GSK has not been able to ascertain whether these devices contain GSK Trade Secrets and Confidential Information.

37. GSK engaged FTI Consulting ("FTI"), a consulting firm with deep expertise in computer forensics, to assist with conducting various forensic analyses of the prior GSK-issued laptop in an attempt to ascertain Brooks' removal, access, and use of GSK Trade Secrets and Confidential Information. *See* Declaration of Chad McDonnell, attached hereto as **Exhibit D**.

38. Based on the foregoing and FTI's analysis, GSK believes that Brooks is in possession of the following categories of GSK documents:

    a. All sent and received emails that were in her GSK inbox as of 2:26 PM and

8

locally saved on January 13, 2022;

b. All documents from Brooks' OneDrive profile that were stored locally on her prior laptop;

c. Documents that she transferred to a Kingston USB drive; and

d. Documents that she downloaded to an unidentified external storage device.

39. GSK, with FTI's assistance, analyzed a sampling of documents that Brooks, upon information and belief, has in her possession, to determine whether Brooks is in possession of GSK Trade Secrets and Confidential Information.

40. Based on the foregoing analyses, GSK believes Brooks has at least the following GSK Trade Secrets and Confidential Information on the ZBook laptop that she removed from the Rockville Facility:

a. GSK manufacturing processes and steps;

b. GSK standard operating procedures;

c. information about highly confidential matters within GSK related to corporate governance and issues pertaining to GSK's corporate structure;

d. highly confidential training materials regarding GSK's internal employee training programs; and

e. strategic business plans.  *See* **Exhibit A.**

41. Based on the foregoing analyses, GSK believes that Brooks emailed the following GSK Trade Secrets and Confidential Information to her personal email address:

a. a GSK-developed, proprietary process, and part of its Quality Management System ("QMS"), which supports how GSK ensures the consistent operation of its

9

>    manufacturing activities in compliance with regulatory requirements; and
>
>    b. confidential training material regarding GSK's internal employee training program. *See id.*

### E. GSK Attempts to Retrieve Its Property from Brooks

42. Upon learning of Brooks' removal of GSK property and information, GSK commenced a review of Brooks' activities leading up to and following her resignation and discovered that Brooks had obtained GSK Trade Secrets and Confidential Information. This review is ongoing.

43. On January 18, 2022, GSK delivered a letter to Brooks demanding she immediately return to GSK the ZBook laptop, hard-copy materials, and any other property that she removed from the Rockville Facility, and that she delete or destroy all electronically-stored copies of GSK confidential or proprietary information. A copy of the January 18, 2022 letter is attached hereto as **Exhibit E**.

44. On January 19, 2022, GSK sent Brooks another copy of the letter dated January 18, 2022, via text message. Brooks responded to the text message denying that she had any of the items listed in the letter. A copy of the text message exchange is attached hereto as **Exhibit F**.

45. On January 28, 2022, undersigned counsel sent another letter to Brooks via courier and email with substantially the same demands as the letter dated January 18, 2022. A copy of the January 28, 2022 letter is attached hereto as **Exhibit G.**

46. Brooks replied by e-mail on January 31, 2022. She did not repeat her denial of possession of the items re-listed in the January 28 letter, but instead stated that she would contact counsel for GSK that day. Despite follow-up emails and a second confirmation that she would

call, Brooks did not call undersigned counsel or contact other relevant GSK personnel. A copy of the email chain with Brooks is attached hereto as **Exhibit H**.

47.     On February 1, 2022, Brooks via email informed GSK that she had secured legal counsel. *Id.*

48.     That same day, GSK, through its counsel, asked for the contact information of Brooks' counsel, which Brooks did not provide. *See id.*

49.     On February 9, 2022, counsel for GSK made an additional attempt to communicate with Brooks in order to resolve this dispute amicably. On February 10, 2022, Brooks' counsel finally contacted counsel for GSK; however, she declined to have a substantive discussion about the dispute at that time and did not respond to subsequent emails and a voicemail from counsel for GSK.

50.     Brooks failed to comply with the multiple demands from GSK, despite its efforts to resolve the matter without seeking court intervention.

## COUNT I—MISAPPROPRIATION OF TRADE SECRETS
## 18 U.S.C. § 1831 *et seq.*

51.     Paragraphs 1 through 50 are incorporated by reference as if fully set forth herein.

52.     To prevail on a claim of misappropriation of trade secrets under 18 U.S.C. § 1836, a plaintiff must allege that it owns a trade secret which was subject to reasonable measures of trade secrecy, the trade secret was misappropriated by improper means, and the trade secret implicates interstate or foreign commerce.

53.     GSK is the owner of certain confidential information and trade secrets relating to GSK's internal manufacturing processes; standard operating procedures; training programs; strategic business plans; and systems that ensure proper design, monitoring, and control of manufacturing processes and facilities in compliance with FDA regulations and similar

11

regulations for ex-US markets for multiple GSK sites, including data generated by those systems.

54. The GSK Trade Secrets and Confidential Information at issue concern a product or service used in, or intended for use in, interstate commerce.

55. Brooks wrongfully obtained and possesses GSK Trade Secrets and Confidential Information through improper means by, at a minimum, improperly requesting and removing a ZBook laptop from the GSK Rockville Facility after her resignation, and retaining a GSK-issued smartphone without the express or implied consent of GSK.

56. GSK has expended substantial resources in developing the GSK Trade Secrets and Confidential Information for its exclusive benefit. GSK Trade Secrets and Confidential Information derive economic value from the fact that they are neither generally known nor readily ascertainable by proper means by any third parties.

57. GSK does not disclose GSK Trade Secrets and Confidential Information to its competitors and has made reasonable, prolonged, and ongoing efforts to protect their confidentiality.

58. GSK communicated GSK Trade Secrets and Confidential Information to Brooks in confidence in the course of her employment at GSK, and Brooks knew that GSK intended for GSK Trade Secrets and Confidential Information to remain confidential.

59. Brooks was contractually obligated to maintain the confidentiality of GSK Trade Secrets and Confidential Information.

60. Brooks has used and/or intends to use GSK Trade Secrets and Confidential Information to harm GSK's business and/or consumer goodwill.

61. As a direct and proximate result of Brooks' misappropriation of trade secrets, GSK has suffered substantial damages, the precise amount of which will be determined at

arbitration.

62. As a result of Brooks' misappropriation of trade secrets, GSK is entitled to recover damages under 18 U.S.C. § 1836(b)(3)(B) for the actual loss caused by the misappropriation of its trade secrets and for any unjust enrichment caused by the misappropriation of the trade secrets that is not addressed in computing damages for actual loss.

63. Brooks acted in bad faith, willfully, and maliciously in misappropriating GSK's trade secrets. Therefore, GSK is entitled to an award of exemplary damages and reasonable attorneys' fees and costs under 18 U.S.C. § 1836(b)(3)(C).

64. Given the circumstances of Brooks' abrupt resignation amid an investigation into her GSK-issued credit card usage, her transfer of files from GSK's internal network to external devices and her personal email address in the days leading up to and immediately following her resignation, her wrongful acquisition and removal of a new laptop immediately following her resignation, and her accessing GSK's files on her laptop after her resignation, Brooks likely has or will presently wrongfully use or disclose GSK Trade Secrets and Confidential Information, which either has or is likely to result imminently in loss of business, loss of consumer goodwill, and the continuing unauthorized use and/or disclosure of confidential information and trade secrets.

65. Unless preliminarily and permanently enjoined in accordance with 18 U.S.C. § 1836(b)(3)(A), Brooks' conduct will continue to cause irreparable harm and damage to GSK. Brooks' possession of GSK's property places her in a position to wrongfully use or disclose GSK Trade Secrets and Confidential Information, which could result in loss of business, loss of consumer goodwill, and the continuing unauthorized use and/or disclosure of confidential information and trade secrets.

## COUNT II—MISAPPROPRIATION OF TRADE SECRETS
### MD. CODE ANN., COM. LAW § 11-1201 *et seq.*

66. Paragraphs 1 through 65 are incorporated by reference as if fully set forth herein.

67. GSK is the owner of certain confidential information and trade secrets relating to GSK's internal manufacturing processes; standard operating procedures; training programs; strategic business plans; and systems that ensure proper design, monitoring, and control of manufacturing processes and facilities in compliance with FDA regulations and similar regulations for ex-US markets for multiple GSK sites, including data generated by those systems.

68. Brooks wrongfully obtained GSK Trade Secrets and Confidential Information through improper means by removing a ZBook laptop from the GSK Rockville Facility after her resignation, and retaining a GSK-issued smartphone without the express or implied consent of GSK.

69. GSK has expended substantial resources in developing GSK Trade Secrets and Confidential Information for its exclusive benefit. GSK Trade Secrets and Confidential Information derive economic value from the fact that they are neither generally known nor readily ascertainable by proper means by any third parties.

70. GSK does not disclose its GSK Trade Secrets or Confidential Information to its competitors and has made reasonable, prolonged, and ongoing efforts to protect their confidentiality.

71. GSK communicated GSK Trade Secrets and Confidential Information to Brooks in confidence and Brooks knew that GSK intended for its trade secrets and confidential information to remain confidential.

72. Brooks was contractually obligated to maintain the confidentiality of GSK Trade Secrets and Confidential Information.

73. Brooks has used and/or intends to use GSK Trade Secrets or Confidential Information to the detriment of GSK's business and/or consumer goodwill.

74. As a direct and proximate result of Brooks' misappropriation of trade secrets, GSK has suffered substantial damages, the precise amount of which can be determined during arbitration.

75. As a result of Brooks' misappropriation of trade secrets, GSK is entitled to recover damages under Md. Code Ann., Com. Law § 11-1203(b) for the actual loss caused by the misappropriation of its trade secrets and for any unjust enrichment caused by the misappropriation of the trade secrets that is not addressed in computing damages for actual loss.

76. Brooks acted willfully and maliciously in misappropriating GSK's trade secrets. Therefore, GSK is entitled to an award of exemplary damages and reasonable attorneys' fees and costs under Md. Code Ann., Com. Law § 11-1203(d). These recoverable fees and costs will significantly exceed $75,000.

77. Given the circumstances of Brooks' abrupt resignation amid an investigation into her GSK-issued credit card usage, her transfer of files from GSK's internal network to external devices and her personal email address in the days leading up to and immediately following her resignation, her wrongful acquisition and removal of a new laptop immediately following her resignation, and her accessing GSK's files on her laptop after her resignation, Brooks likely has or will presently wrongfully use or disclose GSK Trade Secrets and Confidential Information, which either has resulted or is likely to result imminently in loss of business, loss of consumer goodwill, and the continuing unauthorized use and/or disclosure of confidential information and trade secrets.

78. Unless preliminarily and permanently enjoined in accordance with Md. Code

Ann., Com. Law § 11-1202, Brooks' conduct will continue to cause irreparable harm and damage to GSK. Brooks' possession of GSK's property places her in a position to wrongfully use or disclose GSK Trade Secrets and Confidential Information, which could result in loss of business, loss of consumer goodwill, and the continuing unauthorized use and/or disclosure of confidential information and trade secrets.

## COUNT III—CONVERSION

79. Paragraphs 1 through 78 are incorporated by reference as if fully set forth herein.

80. GSK has the right to own and possess the ZBook laptop, smartphone, and any other GSK-owned property removed by Brooks from the Rockville Facility.

81. Brooks has no right to possess GSK-owned property.

82. Brooks removed GSK-owned property from the Rockville Facility, depriving GSK of its rightful possession and use.

83. Brooks has refused to cease possession of the property and continues to exercise control over it.

84. Brooks' wrongful removal of GSK-owned property from its premises entitles GSK to an award of damages in an amount to be established during arbitration.

## COUNT IV—DETINUE / REPLEVIN

85. Paragraphs 1 through 84 are incorporated by reference as if fully set forth herein.

86. Brooks removed the ZBook laptop from the Rockville Facility and continues to possess a GSK-issued smartphone.

87. Because Brooks is no longer employed by GSK, she is not entitled to possession of GSK-owned property. GSK is entitled to immediate possession of its property.

88. GSK has requested, multiple times and by multiple methods, that Brooks return GSK's property.

89.     Brooks has denied possession of GSK's property and refused to return it.

90.     Upon information and belief, the property remains in the possession of Brooks.

91.     Given the circumstances of Brooks' abrupt resignation amid an investigation into her GSK-issued credit card usage, her transfer of files from GSK's internal network to external devices and her personal email address in the days leading up to and immediately following her resignation, her wrongful acquisition and removal of a new laptop immediately following her resignation, and her accessing GSK's files on her laptop after her resignation, Brooks likely has or will presently wrongfully use or disclose GSK Trade Secrets and Confidential Information, which either has or is likely to result imminently in loss of business, loss of consumer goodwill, and the continuing unauthorized use and/or disclosure of confidential information and trade secrets.

92.     Brooks' wrongful possession of GSK-owned property has caused damage entitling GSK to immediate possession of the property prior to judgment in accordance with Md. Rule 12-601(g), or following judgment in accordance with Md. Code Ann., Cts. & Jud. Proc. § 11-104 and Md. Rule 12-602(d)(1).

## **PRAYER FOR RELIEF**

WHEREFORE, GSK prays for the following:

A temporary restraining order and preliminary injunction against Brooks pending a final arbitration adjudication pursuant to the GSK HEAR Legal Agreement:

a. Enjoining Brooks from accessing, using, or disclosing any of GSK's confidential documents, information, or data;

b. Ordering Brooks to return to GSK immediately all property belonging to GSK, including the GSK-issued laptop, GSK-issued smartphone, and any other GSK-owned storage devices, documents or materials she removed from GSK premises;

c. Enjoining Brooks from deleting, destroying, erasing, modifying, or otherwise altering any and all GSK-owned electronic media, documents, or data;

d. Ordering that, with respect to files and documents Brooks copied or transferred outside of the GSK IT network to non-GSK storage devices and services, such as GSK-owned electronic media, documents, or data, Brooks must provide proof that she deleted these items and no longer has access to them, such as by permitting a third-party inspection of any electronic storage devices or cloud-based services which she used to copy or transfer GSK Trade Secrets and Confidential Information;

e. Ordering Brooks to preserve all documents, data, and information pertaining to her employment with or provision of services for GSK, communications between Brooks and other individuals or entities regarding GSK's business, and communications between Brooks and other individuals or entities regarding knowledge of and/or access to GSK's business information; and

f. Such other and further relief as this Court may deem proper.

Dated: February 12, 2022

/s/
Michelle M. McGeogh (Bar No. 028778)
Maraya Pratt (Bar No. 20880)
BALLARD SPAHR LLP
300 East Lombard Street, 18th Floor
Baltimore, MD 21202-3268
Telephone: 410.528.5600
Facsimile: 410.528.5650
mcgeoghm@ballardspahr.com
prattmn@ballardspahr.com

Stephen J. Kastenberg*
Marcel S. Pratt*
Haesun Burris-Lee*
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999
kastenberg@ballardspahr.com
prattm@ballardspahr.com
burrisleeh@ballardspahr.com

* *Pro hac vice* motion pending

*Attorneys for Plaintiff
GlaxoSmithKline LLC*