IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

*Southern Division*

|  |  |
|---|---|
| **GLAXOSMITHKLINE, LLC**, <br><br> **Plaintiff**, <br><br> **v.** <br><br> **DENISE BROOKS,** <br><br> **Defendant**. | **Case No. 8:22-cv-00364-PWG** |

## MEMORANDUM OPINION

Pending before me is Plaintiff GlaxoSmithKline, LLC's ("GSK"), Motion for Civil Contempt and for Sanctions. ECF Nos. 17, 18. Also pending is Defendant Denise Brooks's Motion, which is styled as a Motion to Dismiss or, in the alternative, Stay of Enforcement of Temporary Restraining Order, Opposition to Plaintiff's Motion for Temporary Restraining Order, and Preliminary Injunction and Request for Sanctions ("Ms. Brooks's Motion"). ECF No. 26. No hearing is required for either motion. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, GSK's Motion for Civil Contempt and for Sanctions is GRANTED, Ms. Brooks's Motion is DENIED with respect to her insufficient service claims, and the balance of Ms. Brooks's Motion is STRICKEN due to Ms. Brooks's failure to comply with multiple rules and orders of the Court. Ms. Brooks will be given the opportunity to file a limited motion to dismiss and, separately, an opposition to GSK's Motion for Civil Contempt and for Sanctions, subject to the parameters identified in Section I, *below*.

## BACKGROUND

The unusual circumstances of this case warrant a detailed review of the events that led up to GSK filing its Motion for Civil Contempt and Sanctions against Ms. Brooks, as well as those

that followed. The following summary of this action to date provides the peculiar context in which I consider the parties' respective filings.

Defendant Denise Brooks worked at GSK from November 2006 until her resignation on January 13, 2022. ECF No. 1, Compl., ¶¶ 1; 13. At the time of her resignation, Ms. Brooks was a GSK Quality Systems Lead, a position that gave her access to the "GSK Trade Secrets and Confidential Information" that are the subject of this case. *Id.* ¶¶ 1; 14.

In December 2021, GSK began an internal investigation into the propriety of certain payments charged to Ms. Brooks's GSK-issued credit card. *Id.* ¶ 17. In connection with that investigation, Ms. Brooks agreed to participate in GSK's program for resolving employment-related disputes, known as the HEAR (Helping Employees Achieve Resolution of concerns at work) Program. *Id.* ¶¶ 19–20. As part of the HEAR Program, Ms. Brooks signed an agreement which requires that all employment-related claims be submitted to arbitration ("HEAR Legal Agreement"). *Id.*

On January 12, 2022, in the midst of the investigation, Ms. Brooks corresponded with GSK's IT department to coordinate exchanging her old company-issued laptop for a new one. Compl. ¶ 21. Early the following morning, Ms. Brooks emailed her supervisor to announce her immediate resignation, and stated she would return "all GSK equipment," as required by GSK policy. *See* Compl. Exhibit B at 15.

On the afternoon of January 13, 2022, closed circuit cameras captured Ms. Brooks entering GSK's Rockville facility, and then walking back out "carrying several items" approximately ten minutes later. Compl. ¶ 24–25. Cameras then captured Ms. Brooks as she reentered the building and went to the IT area where GSK alleges she exchanged her old GSK-laptop for a new GSK-laptop (the "ZBook") as arranged prior to her resignation. *Id.* ¶ 26. Because IT was unaware of

Ms. Brooks's resignation, it followed standard procedure and "uploaded [Ms.] Brooks'[s] OneDrive profile onto the ZBook, which created local copies on the ZBook of the same files that had been saved on the old laptop locally." *Id.* at 27, 29.[1] Ms. Brooks then allegedly "signed onto her GSK-owned Microsoft Outlook email account to confirm that it had been loaded onto the ZBook," which resulted in "copies of Brooks'[s] emails – including older emails and any emails that she received before termination of her access" being saved locally to the ZBook. *Id.* ¶ 30. Then, closed-circuit camera footage shows Ms. Brooks leaving the Rockville facility with a computer (allegedly, the ZBook) and her access badge. *Id.* ¶ 34. GSK also asserts that Ms. Brooks emailed documents containing GSK Trade Secrets and Confidential Information to her personal email address in the days before and after her resignation, and that she transferred documents from her GSK laptop to multiple external storage devices. *Id.* ¶¶ 35–36; *id.* Ex. D.

On January 18, 2022, GSK sent Ms. Brooks a letter stating that Ms. Brooks had "unlawfully removed from GSK's Rockville, MD offices a laptop, thumb drive and multiple boxes of materials" following her resignation. Compl., Ex. E. The letter demanded "the immediate return of the laptop, thumb drive, hard-copy materials, and any other GSK property that you may have removed, including any copies and extracts of those materials." *Id.* In response to a follow-up text message that GSK sent the following day, Ms. Brooks denied having "any of [the] things listed in the letter[.]" Compl., Ex. F.

On January 28, 2022, Counsel for GSK contacted Ms. Brooks by letter and by email and made a second demand for the return of GSK's property. Compl., Ex. G. Ms. Brooks responded

---

[1]      GSK explains that employees' OneDrive profiles "contain virtually all of the documents and data that GSK employees create, modify, and store in the performance of their duties, including but not limited to word processing files, data spreadsheets, portable document format ('PDF') files, visual media files, presentations, notes, and other files supported by software applications." Compl. ¶ 28.

by email on January 31, 2022, stating she would contact GSK's Counsel later that day. Compl., Ex. H. The following morning, Ms. Brooks emailed GSK's Counsel again and advised them that she had secured counsel of her own, and that her attorney would be in touch. *Id.* Ms. Brooks did not respond when GSK's Counsel asked her to provide her attorney's contact information. *Id.* On February 10, GSK's Counsel informed Ms. Brooks that GSK would wait until 10:00 AM to hear from her attorney before initiating legal action against Ms. Brooks. *Id.* Apparently, Ms. Brooks's Counsel, Christine Bostick, then reached out to GSK's Counsel to let them know that she was in court that morning and would call GSK's Counsel in the afternoon. *Id.* That evening, after two follow-up emails and a voicemail to Ms. Brooks's Counsel went unanswered, GSK's Counsel informed Ms. Brooks's Counsel that GSK would be filing "a federal lawsuit for emergency injunctive relief" and would contemporaneously file "an arbitration demand with JAMS for permanent injunctive relief and damages, among other claims, as Ms. Brooks agreed to participate in the GSK HEAR dispute resolution program." *Id.* Ms. Brooks was cc'd on this final email from GSK's Counsel. *Id.*

As promised, GSK filed its Complaint for Emergency Injunctive Relief in this Court on February 11, 2022. ECF No. 1, Complaint. On the same day, GSK filed a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction. ECF No. 2, Mot. for TRO. On February 15, 2022, I granted GSK's Motion and issued a TRO ordering Ms. Brooks to return all property belonging to GSK to its offices within 24 hours of her receipt of the TRO. ECF No. 12, TRO; ECF No. 11, Mem. Op. on Mot. for TRO. The TRO further ordered Ms. Brooks to provide proof within 72 hours that she had deleted all files and documents she transferred outside of the GSK IT network to non-GSK storage devices. *Id.* I tentatively set a TRO/preliminary injunction hearing for February 28, 2022. *Id.*

On February 16, 2022, the parties had a conference call with the Court. *See id.* During that call, GSK's Counsel stated that Ms. Brooks had not complied with the terms of the TRO, and Ms. Brooks's Counsel advised that Ms. Brooks denied possession of any GSK property or confidential information. Ms. Brooks's Counsel also disputed GSK's Counsel's representation that Ms. Brooks had been served with process the day before. GSK filed an Affidavit of Service from a private process server later that day. ECF No. 15.

On February 17, 2022, I issued a Scheduling Order setting the TRO/preliminary injunction hearing for February 28, 2022. ECF No. 16. The Scheduling Order also set a March 2, 2022 deadline for Ms. Brooks to file an opposition to GSK's Motion for TRO.

GSK deposed Ms. Brooks on February 22, 2022. At her deposition, Ms. Brooks testified that, although she received emails from GSK's Counsel attaching the Complaint, Motion for TRO and the TRO itself, she did not read any of those documents. Brooks Dep. at 98:18–99:19; 102:5–103:11. She also testified that she had not discussed those documents with her attorney. *Id.* When GSK's Counsel asked Ms. Brooks if she had taken any steps to comply with the TRO, Ms. Brooks first stated that she did not understand the question, *id.* at 103:12–17, but then confirmed that she had not searched her personal email or her home for any GSK documents, and that she had not deleted any GSK documents that she possessed electronically. *Id.* at 104:21–105:15. Ms. Brooks denied possession of any GSK property and any GSK trade secrets or confidential information. *Id.* at 103:12–105:15; 13:16–14:10.

On February 23, 2022, GSK filed a letter with the Court seeking leave to file a Motion for Order of Contempt and for Sanctions against Ms. Brooks due to her failure to comply with the TRO. ECF No. 17, Mot. for Contempt; *see also* ECF No. 13, Letter Order re: Filing of Motions. I issued a Paperless Order at ECF No. 18 construing GSK's letter as a Motion for Expedited Civil

Contempt and instructing Ms. Brooks to respond to the Motion for Contempt on or before March 4, 2022.

At approximately 8:30 AM on February 28, 2022, the day the TRO/preliminary injunction hearing was set to proceed, the Court received a call from Ms. Brooks's Counsel informing the Court that she and her son were ill and that she would be unable to go forward with the in-person hearing as scheduled. ECF No. 22, Renewed TRO. Later that morning, counsel for both parties agreed to continue the TRO until the hearing, which was rescheduled for March 14, 2022. *Id.* Because GSK had flown in witnesses from out of state to proceed with the in-person hearing scheduled for February 28, the March 14 hearing was to proceed virtually. *Id.* Ms. Brooks's Counsel also agreed that, should the March 14 hearing also be cancelled due to her illness, the TRO would continue in effect until a hearing could be held and the Court had made a ruling. *Id.*

On the day of the rescheduled hearing at approximately 6:19 AM, Ms. Brooks's Counsel emailed the Court and stated that she would again be unable to participate in the TRO/preliminary injunction hearing due to her ongoing illness. *See* ECF No. 24. Ms. Brooks's Counsel stated in her email that she would provide the Court with a doctor's note reflecting her inability to participate in the hearing as scheduled. *Id.* In response to Ms. Brooks's Counsel's email, I issued a Letter Order cancelling the hearing and continuing the TRO "until the completion of the TRO hearing and the subsequent issuance of a ruling by the Court, to which the Defendant previously [] consented." ECF No. 24, ("March 14 Letter Order") (citing Renewed TRO). Although Ms. Brooks did not request an extension to the already expired deadlines to respond to GSK's Motion for TRO and Preliminary Injunction, or its Motion for Civil Contempt, I extended both deadlines to March 28, 2022, in light of her attorney's illness. *Id.* ¶¶ 4–5. I warned Ms. Brooks that if she failed to respond to GSK's Motion for Contempt and Sanctions by the new deadline, I would consider it

unopposed. *Id.* ¶ 5. I also reminded Ms. Brooks of her obligation to comply with the TRO and advised her that she would be wise to provide me with proof of compliance with the TRO in advance of my ruling on GSK's Motion for Contempt and Sanctions. *Id.* ¶ 3. Finally, I ordered Ms. Brooks's Counsel to provide the Court with a doctor's note that "provided documentation that [Counsel] was medically unable to participate in the hearing set for March 14, 2022, and medically unable to alert the Court to that fact by phone or email" prior to the morning of the hearing. *Id.* The note was also to document when Ms. Brooks's Counsel would be "medically able to resume practice," and was to be filed with the Court "not later than March 28, 2022." *Id.*

The March 28, 2022, deadline came and went without any further communication from Ms. Brooks or her attorney. On April 18, 2022, Counsel for GSK wrote a letter to the Court to "supplement the record for [GSK's] Motion for Order of Contempt and for Sanctions." ECF No. 25. GSK's Letter informed the Court that:

> On April 14, counsel for both parties participated in an initial JAMS arbitration status conference before the Honorable Allyson K. Duncan, Retired Judge of the U.S. Court of Appeals for the Fourth Circuit. Among other matters, the topic of Defendant Denise Brooks' lack of compliance with this Court's Temporary Restraining Order ("TRO") arose. Ms. Bostick, counsel for Ms. Brooks, made it clear that Ms. Brooks has no intention to comply with the Court's TRO. She stated that: (1) Ms. Brooks takes issue with this Court's directive to provide proof that she no longer has access to GSK files that she copied to her personal, non-GSK storage devices and accounts; and (2) Ms. Brooks did not take the GSK issued laptop (despite unrebutted video, forensic, and testimonial evidence to the contrary).

*Id.*

GSK's April 18 Letter also informed the Court that GSK had "secured and offered to pay for a consultant to conduct the personal-device and storage-account inspections contemplated by the TRO" but that "Ms. Brooks rebuffed the offer, leaving GSK to continue wondering where its property and highly sensitive trade secrets are, and what is being done with them." *Id.* GSK attached to its April 18 Letter a correspondence it had sent to Ms. Brooks and her Counsel a month

earlier in which GSK offered to pay for the inspection ordered by the TRO. *Id.*, Ex. A. Finally, GSK's April 18 Letter noted Ms. Brooks's Counsel's failure to comply with the Court's March 14 Letter Order by failing to "respond[] to a single filing," and failing to "help[] to reschedule the hearing that she asked to be canceled twice." *Id.* While acknowledging Ms. Brooks's Counsel's health concerns, GSK's Letter noted that Ms. Brooks's Counsel has actively participated in other court matters and personal endeavors. *Id.*

On April 26, 2022, Ms. Brooks filed a Motion at ECF No. 26, styled as a Motion "to Dismiss or, in the alternative, Stay of Enforcement of Temporary Restraining Order, Opposition to Plaintiff's Motion for Temporary Restraining Order, and Preliminary Injunction and Request for Sanctions." As its title suggests, Ms. Brooks's Motion seeks a wide variety of relief and for a myriad of reasons. On April 27, 2022, GSK sent an urgent communication to the Court alleging that one of the Exhibits to Ms. Brooks's publicly filed Motion contained the very confidential information that Ms. Brooks is prohibited from disclosing under the terms of the TRO. ECF No. 29. I sealed the exhibit in question in response to GSK's letter. ECF No. 28.

Additional facts will be provided below as needed.

## DISCUSSION

### I.    Ms. Brooks's Motion

I begin by addressing Ms. Brooks's April 26, 2022 Motion, the majority of which will be stricken because it was filed in violation of at least two prior Orders in this case, the Local Rules for the District of Maryland, and the Federal Rules of Civil Procedure. However, in the interest of justice and efficiency in this already unduly drawn-out case, I will briefly reach the merits of Ms.

Brooks's improperly filed Motion with respect to her claims of insufficient service of process and deny the Motion on those grounds.[2]

Fed. R. Civ. P. 4(e) governs the standard for service of process in the federal courts. As relevant in this case, it states:

> **(e) Serving an Individual Within a Judicial District of the United States.** Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by:
> **(1)** **following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made**; or
> **(2)** doing any of the following:
>   **(A)** delivering a copy of the summons and of the complaint to the individual personally;
>   **(B)** **leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there**; …

Fed. R. Civ. P. 4(e) (emphasis added). The Maryland Rules and the Federal Rules governing proper service of process are "almost identical," except that the Maryland Rules allow for one additional method of service (certified mail), which is not relevant here. *Wondimante v. Assefa*, No. CV DKC 2004-3718, 2005 WL 8174690, at *1–2 (D. Md. Mar. 16, 2005). Maryland Rule 2-121, which governs service of process in the Maryland Circuit Courts, provides in relevant part that "[s]ervice of process may be made within this State . . . if the person to be served is an individual, by leaving a copy of the summons, complaint, and all other papers filed with it at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion[.]" Md. Rule 2-121 (emphasis added).

Parties contesting the sufficiency of service are provided a 21-day window in which to do so under the Federal Rules. Rule 12(a)(1)(A)(i) provides that a defendant must serve an answer

---

[2]     No response is required from GSK on this narrow issue, which I resolve in GSK's favor.

"within 21 days after being served with the summons or complaint[.]" And Rule 12(b) provides that a motion asserting the defenses enumerated in subsections (1)–(7), which includes "insufficient service of process" under Rule 12(b)(5), must be filed before filing an answer. As a matter of logic, therefore, a motion under Rule 12(b) must be filed within 21 days of service unless otherwise ordered by the Court. *See Lora v. Ledo Pizza Sys., Inc.*, No. CV DKC 16-4002, 2017 WL 3189406, at *4 (D. Md. July 27, 2017); *Potter v. SunTrust Bank*, No. 3:14-CV-436, 2014 WL 5410634, at *5 (E.D. Va. Oct. 23, 2014).

There is no dispute that Ms. Brooks failed to file a motion under Rule 12(b)(5) within 21 days of service. I will address whether that failure constitutes a waiver of the defense below. First, though, I will consider the effect, if any, of Ms. Brooks's verbal denials of service of process that did occur within the 21-day window.

Ms. Brooks, through counsel, verbally denied she was served with process during the parties' February 16, 2022, telephone conference with the Court. Shortly thereafter, GSK filed an Affidavit of Service signed by a private process server. The Affidavit of Service indicates the process server served a Writ of Summons, the Complaint, and GSK's Motion for TRO and Preliminary Injunction[3] "upon Denise Brooks, by subserving, Mr. Wilson, Housemate, who acknowledged that they both live at this address." Next, during Ms. Brooks's deposition, Ms. Brooks's Counsel stated that her "understanding [was] that there was no service of process." Brooks Dep. at 94:5–7. When questioned, Ms. Brooks explained that Mr. Wilson was her

---

[3]     GSK's "proposed Temporary Restraining Order, Emergency Motion for Expedited Discovery with Exhibits 1–4 and proposed order, Corporate Disclosure Statement, Motion to Appear Pro Hac Vice for Marcel Pratt, Motion to Appear Pro Hac Vice for Stephen J. Kastenberg, Motion to Appear Pro Hac Vice for Haesun K. Burris, Restraining Order, Memorandum Opinion and Letter Scheduling Call, [and] Letter Order Regarding The Filing of Motions[.]" Affidavit of Service.

significant other, but that Mr. Wilson does not reside in her home, and that he did not give her a packet containing GSK's Complaint and other documents. *Id.* at 94:19–96:3.

Although the burden of demonstrating sufficient service rests with GSK, Ms. Brooks's bare assertions that she was not properly served do not suffice to refute the process server's affidavit, which constitutes prima facie evidence of valid service of process. *See Putt-Putt, LLC v. 416 Constant Friendship, LLC*, No. 8:12-CV-3018-AW, 2013 WL 12246353, at *1 (D. Md. Feb. 13, 2013); *see also Flores v. Env't Tr. Sols.*, Inc., No. PWG-15-3063, 2018 WL 2237127, at *3–4 (D. Md. May 16, 2018) (An affidavit from the plaintiff denying service constitutes "a mere denial."). To overcome the presumption of valid service created by the process server's affidavit, a defendant refuting service must provide corroborative evidence from a disinterested witness. *Ashe v. Spears*, 284 A.2d 207, 210 (Md. 1971). The Maryland Court of Appeals explains:

> The rule of our cases is that the return of service of process is presumed to be true and accurate and a mere denial by a defendant, unsupported by corroborative evidence or circumstances, is not enough to impeach the return of the official process server, [(collecting cases)]. This is because the affirmative testimony of the official process server acting in the regular routine of duty without a motive to misrepresent must be preferred to the negative evidence of one claiming not to have been served, either for reasons of public policy or as a matter of probability.
>
> The rule has a corollary, however: if the defendant's denial is supported by corroborative evidence by independent, disinterested witnesses, the denial will stand unless the corroborative evidence is refuted.

*Id.*

Here, the process server's Affidavit of Service indicates that he served Ms. Brooks by leaving the required documents at her home address with an individual of suitable age and discretion, namely, Mr. Wilson, who represented that he lived at the same address as Ms. Brooks. Accordingly, because Ms. Brooks's verbal denials of service were unsupported by corroborating evidence of an independent witness, they are insufficient to refute the Affidavit of Service

indicating that Ms. Brooks was properly served on February 15 under Fed. R. Civ. P. 4(e)(1), Fed. R. Civ. P. 4(e)(2), and Md. Rule 2-121(a).

On April 26, 2022, long after the 21-day deadline to file a motion under Rule 12(b), Ms. Brooks filed her Motion seeking dismissal of GSK's Complaint for insufficient service of process pursuant to Fed R. Civ. P. 12(b)(2) and Fed R. Civ. P. 12(b)(5). For the reasons explained below, I conclude that Ms. Brooks has waived her insufficient service defense, and that her Motion to dismiss on those grounds must be denied.

"[F]ailure to effect proper service of process deprives the court of personal jurisdiction over a defendant" absent waiver. *Koehler v. Dodwell*, 152 F.3d 304, 306 (4th Cir. 1998). Fed. R. Civ. P. 12(b) provides that a motion asserting insufficient service as a defense "must be made before pleading if a responsive pleading is allowed." Under Rule 12(h), a party waives a defense of insufficient service of process by failing to either "make it by motion under this rule; or include it in a responsive pleading[.]" Because Rule 12(a) requires a defendant to serve an answer to a complaint within 21 days of service, and because Ms. Brooks was served on February 15, 2022, her deadline to raise a defense of insufficient service under Rule 12(b)(5) was March 8, 2022.

The United States Supreme Court has made clear that the failure to timely raise a challenge to personal jurisdiction may result in the waiver of that defense:

> In sum, the requirement of personal jurisdiction may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue. These characteristics portray it for what it is—a legal right protecting the individual. The plaintiff's demonstration of certain historical facts may make clear to the court that it has personal jurisdiction over the defendant as a matter of law—*i.e.*, certain factual showings will have legal consequences—but this is not the only way in which the personal jurisdiction of the court may arise. **The actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not.**
>
> **The expression of legal rights is often subject to certain procedural rules: The failure to follow those rules may well result in a curtailment of the rights**. Thus,

> **the failure to enter a timely objection to personal jurisdiction constitutes, under Rule 12(h)(1), a waiver of the objection.**

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704–05 (1982) (emphasis added).

The Fourth Circuit also acknowledges that, while "a district court lacks the power to enter judgment against a party over whom the court lacks personal jurisdiction," personal jurisdiction may be waived. *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc*., 369 F.3d 385, 394 (4th Cir. 2004) (citations omitted). Under those circumstances, "even if the district court in fact lacked personal jurisdiction over a party," at the time it entered an order, "the failure to timely raise the defense may result in the enforcement of a judgment that the district court was, in one sense, powerless to render." *Id.*; *see also Pusey v. Dallas Corp.*, 938 F.2d 498, 501 (4th Cir. 1991) ("[W]e hold that by failing to raise the defense that service of process was untimely under Rule 4(j) either in a pre-answer motion or, if no such motion is made, then in its answer, a defendant waives that defense and submits to the personal jurisdiction of the court under Fed. R. Civ. P. 12(h)(1)(B), unless at the time of service of the answer the defendant did not know that the defense was available.").

This Court and other district courts in the Fourth Circuit have applied this principle to a defendant's failure to raise a Rule 12(b)(5) objection for insufficient service in a pre-answer motion, or within the answer itself. In *Hartman v. Univ. of Maryland at Baltimore*, No. CIV.A. ELH-10-2041, 2012 WL 3544730, at *10 n.13 (D. Md. Aug. 14, 2012), for example, Judge Hollander observed in a footnote that, in her view, the defendant had "waived its right to claim that it was improperly served" when the defendant "failed to bring a motion under Rule 12(b)(5) challenging service, and similarly failed to raise the issue of service in its answer." The Middle District of North Carolina similarly notes that a defendant "waives service if the defendant . . .

fails to raise the service and summons issue in a pre-answer filing or in its answer." *Teasley v. Stein*, No. 1:20CV1166, 2022 WL 715923, at *2 (M.D.N.C. Mar. 10, 2022). *See also Trustees of Ironworkers Union No. 16 Pension Plan v. Turner*, No. CIV AMD-07-1691, 2010 WL 917359, at *5 (D. Md. Mar. 10, 2010) ("It is true that Md. Rule 2–322(a), like Fed. R. Civ. P. 12(h) (1), provides that a failure to raise the defense of insufficient service of process is tantamount to a waiver of that defense.").

Given the preference of the courts to decide cases on their merits, the technical violation of Rule 12's timing requirements alone is not generally sufficient to find that a party has waived the defenses available under Rule 12(b). *See Lora*, 2017 WL 3189406, at *4. A finding of waiver also requires the court to determine that the defendant has submitted to the court's jurisdiction. *See Samuels v. Two Farms*, Inc., No. CIV A. DKC10-2480, 2010 WL 4103670, at *2 (D. Md. Oct. 18, 2010). Usually, a defendant's "first appearance or filing is the first moment where he submits to the jurisdiction of the court." *Id.* (citing *Flanagan v. Dep't of Human Resources*, 989 A.2d 1139, 1143 (Md. 2010)); *Trademark Remodeling, Inc. v. Rhines*, 853 F. Supp. 2d 532, 537–38 (D. Md. 2012).[4] This often occurs at the moment that a defendant files an answer without asserting the defense under Rule 12(b)(5), either by a separate motion or within the answer itself. *See, e.g., Hartman*, 2012 WL 3544730, at *10 n.13.

Ms. Brooks has not filed an answer to GSK's Complaint. And had Ms. Brooks ignored this proceeding in its entirety, the waiver analysis would not be applicable — a defendant "is always

---

[4]     This requirement, of course, encompasses filings and appearances by counsel, whose appearance "creates a presumption that he has authority to act[.]" *Bowles v. Am. Brewery*, 146 F.2d 842, 847 (4th Cir. 1945); *Sharpe v. U.S.*, No. CV TDC-19-1607, 2020 WL 1505701, at *5 (D. Md. Mar. 30, 2020) (citing *Bethlehem Steel Corp. v. Devers*, 389 F.2d 44, 45 (4th Cir. 1968) ("[T]he law typically accepts attorneys' representations that they have the authority to act on behalf of their clients without the need to furnish further proof.").

free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Compagnie des Bauxites de Guinee*, 456 U.S. at 706. But this does not describe Ms. Brooks's approach. Ms. Brooks, through counsel, has repeatedly corresponded with the Court by phone and email, and has participated in conference calls with Court and with GSK. She submitted to a deposition that was ordered by the court, and she has twice scheduled hearings to address the merits of GSK's Motion for TRO and Preliminary Injunction, indicating an intent to voluntarily appear. And when she then, due to her Counsel's asserted (but not documented as proffered, and as ordered by the Court) illness, requested the cancellation of those hearings, she consented to the continuation of the TRO, first for an additional two weeks, and then indefinitely, until the Court could hold a TRO/preliminary injunction hearing and issue a ruling. Taken together, Ms. Brooks's actions through counsel and her simultaneous failure to timely assert the defense of insufficient service of process under Rule 12(b)(5) constitutes submission to the jurisdiction of this Court and the waiver of that defense pursuant to Rule 12(h)(1).

Furthermore, filing a 12(b)(5) Motion on April 26, 49 days after the March 8 deadline, is no mere technical violation of the Rule, particularly in light of the time-sensitive nature of this case. *Cf. Lora v. Ledo Pizza Sys., Inc*., No. CV DKC 16-4002, 2017 WL 3189406, at *4 (D. Md. July 27, 2017) (declining to enter default when defendant filed its answer one day late); *United Advert. Agency, Inc. v. Robb*, 391 F. Supp. 626, 631 (M.D.N.C. 1975) ("This is a technical violation of Federal Rule 12(a) since the response was two days late, but this Court has never refused to consider a substantial issue such as was raised by the motion because of a one or two day delinquency in complying with a strictly procedural rule."). Ms. Brooks had actual notice[5] of

---

[5]     Counsel for GSK communicated with Ms. Brooks directly via her email address at newbeginnings.db@gmail.com before she retained counsel. *See* ECF No. 1-8, Email Chain at 6–

this action long before the deadline and simply chose not to abide by the applicable Rules with respect to her defense. And while I remain sensitive to Ms. Brooks's Counsel's (as yet undocumented) health concerns earlier in these proceedings, her active participation in other cases is a matter of public record,[6] and her illness will not excuse Ms. Brooks's failure to timely raise the defense or request an extension of time in which to do so.

For those reasons, I find that Ms. Brooks has waived the defense of insufficient service of process pursuant to Fed. R. Civ. P. Rules 12(b)(5) and 12(h)(1). Accordingly, Ms. Brooks's Motion to dismiss for insufficient service of process is DENIED.

The balance of Ms. Brooks's Motion is STRICKEN for Ms. Brooks's failure to comply with the applicable procedural rules and orders of the Court. The specific problems with Ms. Brooks's Motion are identified below:

- Ms. Brooks filed her Motion without first filing a pre-motion letter with the Court as required by the Letter Order Regarding the Filing of Motions at ECF No. 15.

- Ms. Brooks's Motion, which is 41 pages in length, violates Local Rule 105.3, which provides that memoranda in support of a motion shall not exceed 35 pages unless otherwise ordered by the Court. Ms. Brooks did not seek, and I did not grant, leave to exceed the 35-page limit.

- Ms. Brooks's Motion to Dismiss pursuant to Fed R. Civ. P. 12(b) is untimely.

- Ms. Brooks's opposition to GSK's Motion for TRO and Preliminary Injunction and her opposition to GSK's Motion for Civil Contempt and Sanctions were filed in violation of the Court's March 14 Letter Order, ECF No. 24, which extended the deadlines for both oppositions to March 28, 2022, in light of Ms. Brooks's Counsel's illness. I specifically warned Ms. Brooks in that Letter Order that GSK's Motion for Civil Contempt would be deemed unopposed if she failed to respond by

---

9. Ms. Brooks confirmed this was her personal email address during her deposition, and she responded to emails from GSK's Counsel using that address. *Id.* GSK's Counsel informed Ms. Brooks of GSK's intent to file a lawsuit for injunctive relief and provided copies of GSK's filings to Ms. Brooks via email shortly after filing them with the court.

[6]        *See, e.g., Harris v. Fix*, No. 24C21002000 (Balt. County Cir. Ct.) (docket available via Maryland Judiciary Case Search at https://casesearch.courts.state.md.us/casesearch/). The court takes judicial notice of this information. Fed. R. Evid. 201(b)(2).

the deadline. Notwithstanding that warning, Ms. Brooks failed to respond for an additional 28 days after the March 28 deadline.[7]

 Despite her numerous violations and her apparent disregard for the rules and orders of this Court, I will provide Ms. Brooks a final opportunity to file a motion to dismiss, and a separate opposition to GSK's Motion for Sanctions in accordance with the briefing schedule and parameters below. Because Ms. Brooks's past refusal to comply with the Court's deadlines have already caused an unacceptable delay in this time-sensitive matter, there will be no further leniency with respect to her filing deadlines unless Ms. Brooks requests and receives my advanced permission to extend a deadline. I am unlikely to grant any such request for an extension absent good cause. Any late filings by Ms. Brooks will be stricken without further notice.

- Ms. Brooks shall file her motion to dismiss on or before **May 19, 2022**. GSK may file an opposition on or before **June 2, 2022**. The parties' briefs are not to exceed 25 pages, double-spaced (Times New Roman font 12 point in the body, 10 point for footnotes), exclusive of exhibits and tables of contents and authorities. The pertinent language in any exhibits shall be highlighted to assist in the Court's efficient review. Ms. Brooks may file a reply on or before **June 9, 2022**. Ms. Brooks's reply shall be in the same format as her opening brief and is not to exceed 12 pages. Finally, for the reasons explained above, Ms. Brooks's motion to dismiss shall not include any argument regarding sufficiency of service of process because she has waived that defense. Any arguments to that effect will be summarily denied.

- Ms. Brooks shall file a letter-opposition to the nature of the sanctions requested in GSK's Motion for Sanctions[8] on or before **May 19, 2022**. Her opposition is not to exceed 7 pages, single-spaced. GSK may file a reply, which is not to exceed 7 pages, single-spaced, on or before **May 26, 2022**.

---

[7]     Additionally, GSK alleges that Exhibit N to Ms. Brooks's Motion contained the trade secrets and/or confidential information that are the subject of this action, and that attaching that information to a public filing was itself a violation of the TRO. *See* ECF No. 29. Until such time as I resolve the issue of what constitutes trade secrets and confidential information in this matter, all materials containing documents taken from GSK, and all filings quoting such material, shall be publicly filed in redacted form, and an unredacted copy shall be filed under seal.

[8]     As explained in Section II, *below*, Ms. Brooks has waived her opportunity to respond to GSK's Motion for Civil Contempt. Her opposition shall address only: (1) the propriety of the sanctions imposed in this Opinion and accompanying Order, and (2) whether Ms. Brooks has taken any actions to purge the contempt.

## II.      Motion for Civil Contempt and for Sanctions

GSK filed its Motion for Civil Contempt on February 23, 2022. ECF Nos. 13, 14. Ms. Brooks's deadline to oppose GSK's Motion for Civil Contempt and for Sanctions was originally set for February 28, 2022. *Id.* Ms. Brooks missed this deadline and did not seek an extension. On March 14, 2022, I amended the briefing schedule *sua sponte* in light of Ms. Brooks's Counsel's illness, and set a new deadline for Ms. Brooks to oppose GSK's Motion for Civil Contempt for March 28, 2022. *See* March 14 Letter Order. I specifically warned Ms. Brooks that if she failed to respond to GSK's Motion by that deadline, I would consider it unopposed. *Id.* Ms. Brooks apparently did not take me at my word and did not file her response to GSK's Motion for Contempt and for Sanctions until April 26, 2020. Accordingly, consistent with my March 14 Order, I find that Ms. Brooks has waived her opportunity to respond to GSK's Motion for Civil Contempt, and I will consider it unopposed.

A finding of civil contempt is appropriate when a party "violates a court order that sets forth an unequivocal command." *Ledo Pizza Sys., Inc. v. Singh*, No. CIV. WDQ-13-2365, 2014 WL 1347113, at *2–3 (D. Md. Apr. 3, 2014) (quoting *In re General Motors*, 61 F.3d at 258)). A court may impose sanctions for civil contempt in order to "coerce obedience to a court order or to compensate the complainant for losses sustained as a result of" violating a court order. *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995); *see also* Fed. R. Civ. P. 16(f) ("On motion or on its own, the court may issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order.").

To support a finding of civil contempt, the complainant (here, GSK) must establish the following four elements by clear and convincing evidence: "(1) the existence of a valid decree of

which the alleged contemnor had actual or constructive knowledge; (2)... that the decree was in the movant's favor; (3)... that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4)... that [the] movant suffered harm as a result." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (alterations in original).

GSK easily establishes these elements. There is no question that the TRO is a "valid decree" or that it was entered in GSK's favor. *See generally* TRO. Furthermore, the record reflects that Ms. Brooks has had actual knowledge of the TRO since at least February 22, 2022. After the TRO was issued on February 15, 2022, GSK's Counsel sent it via email to Ms. Brooks and her attorney. *See* ECF No. 17-2, Email Chain at 1–2. At her deposition, Ms. Brooks acknowledged receiving the email attaching the TRO, but denied reading the TRO at that time. *See* Brooks Dep. at 101:5–104:3. Even accepting Ms. Brooks's testimony that she did not read the TRO when she received it from GSK's Counsel, the TRO was presented to Ms. Brooks as an exhibit at her deposition on February 22, 2022, and GSK's Counsel walked through its requirements with her at that time. *Id*. at 102–105. Further, a party may not shield themselves from the obligation to comply with a court order through willful ignorance of the contents of that order, as Ms. Brooks apparently has attempted to do in this case. Accordingly, Ms. Brooks has had actual knowledge (or such knowledge is imputed to her under the facts summarized above) of the TRO and its contents for a minimum of 72 days.

Despite having been aware of the TRO and its contents for more than two months, Ms. Brooks has failed to comply with its clear and unequivocal instructions. The TRO required Ms. Brooks to return all GSK property in her possession to a GSK office within 24 hours of receipt of the TRO. ECF No. 22, Renewed TRO at 3. Ms. Brooks testified that she does not have any GSK

19

property in her possession. Brooks Dep. at 13:16–14:10. Obviously, Ms. Brooks cannot return what she does not possess. But even if Ms. Brooks is correct that a search for GSK property would be futile, she has still failed to comply with the TRO's instruction that she "provide proof within 72 hours that she deleted" all "files and documents that she copied or transferred outside of the GSK IT network" and no longer has access to them. Renewed TRO at 3. Further compounding this failure, Ms. Brooks has apparently rejected GSK's offer to fund the forensic examination of her electronic devices to confirm compliance with the TRO. *See* GSK Supplemental Correspondence. GSK's offer to organize and fund the forensic examination of Ms. Brooks's devices obviates any argument by Ms. Brooks that she is financially unable to comply with the terms of the TRO. *See Turner v. Rogers*, 564 U.S. 431 (2011).

Finally, GSK has suffered harm as a result of Ms. Brooks's failure to comply with the TRO. As I explained in the Memorandum Opinion granting GSK's Motion for TRO, "the confidential information allegedly misappropriated by Ms. Brooks . . . could have a potentially devastating impact on GSK's business in the hands of a competitor." ECF No. 11 at 8. Additionally, GSK has "expended substantial time and resources attempting to recover and protect its trade secrets, confidential information, and property," and has been forced to continue to do so as a result of Ms. Brooks's refusal to abide by the applicable rules and orders of the Court. GSK Contempt Mot. at 3. Accordingly, Ms. Brooks's failure to return any GSK property in her possession, or to provide proof that she no longer has access to any GSK documents, creates an ongoing harm to GSK.

For those reasons, I find that GSK has established the four required elements for civil contempt by clear and convincing evidence, and I hold Ms. Brooks in civil contempt of court. As a sanction, Ms. Brooks shall pay a fine of **$200.00 per day** unless and until she either (1) demonstrates that she lacks the ability to pay that sanction, or (2) purges the contempt by fully

complying with the terms of the TRO. If Ms. Brooks fails to pay the fine, demonstrate an inability to pay, and/or purge the contempt, she will face possible imprisonment.

Ms. Brooks is held in civil contempt of court, and monetary sanctions shall accrue, as of the date of this Opinion and accompanying Order. Because Ms. Brooks failed to meet the Court's deadline, Ms. Brooks has waived her opportunity to challenge GSK's Motion for Civil Contempt. Ms. Brooks may, however, file an opposition in accordance with the guidelines in Section I, *above*, that narrowly addresses the propriety of the sanctions imposed in this Opinion and accompanying Order, as well as any actions by Ms. Brooks that would purge the contempt. The enforcement of monetary sanctions shall be suspended until I have reviewed the parties' forthcoming briefing on those issues and reassessed the propriety of imposing monetary sanctions in light of the arguments therein.

## CONCLUSION

For the reasons identified in this Memorandum Opinion, GSK's Motion for Civil Contempt and for Sanctions is GRANTED. Ms. Brooks's motion to dismiss for insufficient service of process is DENIED, and the balance of Ms. Brooks's Motion is STRICKEN. A separate order shall be issued together with this Memorandum Opinion.

Dated: May 5, 2022                                    _____/S/_____
                                                       Paul W. Grimm
                                                       United States District Judge