IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **GLAXOSMITHKLINE, LLC**, <br><br>　　　　**Plaintiff**, <br><br>　v. <br><br> **DENISE BROOKS,** <br><br>　　　　**Defendant**. | Case No. 8:22-cv-00364-PWG |

**MEMORANDUM OPINION AND ORDER**

Pending before me are Plaintiff GlaxoSmithKline, LLC's, ("GSK") Motion for Preliminary Injunction, ECF No. 2, and GSK's Expedited Emergency Motion for Discovery, ECF No. 3. For the reasons explained in the Memorandum Opinion and Order, GSK's Motion for Preliminary injunction is granted, its Motion for Discovery is denied as moot, and default judgment is entered in favor of GSK and against Defendant Denise Brooks.

**BACKGROUND**

I will not rehash for a second time the unusual and troubling circumstances of this case to date. A detailed factual summary is contained in my May 6, 2022, Memorandum Opinion at ECF No. 31. *See also* ECF No. 11, Mem. Op. granting Temporary Restraining Order. For the purposes of this Opinion, it suffices to say that I have provided Defendant Denise Brooks with every opportunity to defend herself in this matter, and that she has repeatedly declined to do so, serially violating the rules and orders of the Court along the way. *See* Mem. Op. at ECF No. 31.

In my May 6, 2022 Memorandum Opinion, after I struck the bulk Ms. Brooks's untimely and noncompliant "Motion to Dismiss or, in the alternative, Stay of Enforcement of Temporary Restraining Order, Opposition to Plaintiff's Motion for Temporary Restraining Order, and

1

Preliminary Injunction and Request for Sanctions," ECF No. 26, I gave Ms. Brooks "a final opportunity to file a motion to dismiss, and a separate opposition to GSK's Motion for Sanctions" and informed Ms. Brooks in no uncertain terms that, in light of her "past refusal to comply with the Court's deadlines . . . there will be no further leniency with respect to her filing deadlines unless Ms. Brooks requests and receives my advanced permission" for an extension. ECF No. 31 at 17. I then granted Ms. Brooks leave to file a limited motion to dismiss and a separate opposition to GSK's Motion for Sanctions by May 19, 2022. *See* ECF No. 32. More than two months after that deadline's expiration, and with no request for an extension, Ms. Brooks has taken no further action in response to GSK's Complaint, its Motion for Preliminary Injunction, or its Motion for Sanctions. Meanwhile, a Temporary Restraining Order has been in place since February 15, 2022 (*see* ECF No. 12; ECF No. 22; ECF No. 24) and Ms. Brooks has consented to extend the TRO until such time that a "hearing can be completed and the Court issues its ruling" on GSK's Motion for Preliminary Injunction. ECF No. 22, Renewed TRO at 3. Ms. Brooks has cancelled two scheduled hearings and has made no effort to schedule a third. *See* ECF No. 24.

Additional facts will be provided below as needed.

I.   **GSK's Motion for Preliminary Injunction is granted**

Temporary restraining orders and preliminary injunctions serve similar functions and are subject to substantially the same legal standards. *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). A preliminary injunction is distinguished from a TRO only by the difference in the required notice to the nonmoving party, and by the duration of the relief it provides. *US Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n. 1 (4th Cir. 2006) (comparing Fed. R. Civ. P. 65(a) with Fed . R. Civ. P. 65(b)). Temporary restraining orders are of limited duration, whereas preliminary injunctions are indefinite. *Hoechst Diafoil Co. v. Nan Ya*

*Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). A preliminary injunction preserves the status quo "pending a final trial on the merits," while a TRO "is intended to preserve the status quo only until a preliminary injunction hearing can be held." *Id.* To that end, a court is permitted to enter a TRO under Rule 65(b) "without full notice, even, under certain circumstances, ex parte." *Id.* (citing Fed. R. Civ. P. 65(b)). Rule 65(a)(1), however, requires "notice to the adverse party" before the issuance of a preliminary injunction. "Although Rule 65(a)(1) does not specify what length of notice is required, the Supreme Court has explained that the defendant must be 'given a fair opportunity to oppose the application and to prepare for such opposition.'" *Hoescht Diafoil Co.*, 174 F.3d at 422 (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 433 n. 7 (1974)).

Holding an evidentiary hearing and/or oral argument on a motion for preliminary injunction is the standard and preferred practice. *See Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 893 (1st Cir. 1988) ("As a general rule, where issues of fact are disputed, an evidentiary hearing is a highly desirable prelude—if not a necessary concomitant—to the granting of an interlocutory injunction."). A hearing is not, however, "an indispensable requirement when a court allows or refuses a preliminary injunction." *Id.* (collecting cases). Multiple Circuit Courts have addressed this issue and concluded that under certain circumstances, a district court may enter a preliminary injunction without holding a hearing. *See, e.g., Syntex Ophthalmics, Inc. v. Tsuetaki*, 701 F.2d 677, 682 (7th Cir. 1983) ("Under the circumstances of this case, however, an evidentiary hearing was unnecessary because the evidence already in the district court's possession enabled it to conclude that the plaintiff had a reasonable likelihood of success on its claim of trade secret misappropriation."); *Town of Burlington v. Dep't of Ed. of Com. of Mass.*, 655 F.2d 428, 433 (1st Cir. 1981). This Court has likewise noted that "Rule 65 does not explicitly require an oral hearing

3

on a preliminary injunction motion." *Fundamental Admin. Servs., LLC v. Anderson*, No. CIV. JKB-13-1708, 2015 WL 2340831, at *1 (D. Md. May 13, 2015) (quoting 11A Charles Alan Wright, Arthur B. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2949, at 246–49 (2013)). Further, this Court has found that it may be appropriate to convert a TRO into a preliminary injunction as a result of a defendant's failure to defend and/or failure to appear. *See ICENY USA, LLC v. M&M's, LLC*, No. CV TDC-19-2418, 2019 WL 7565457, at *2 (D. Md. Sept. 6, 2019).

There can be no question that Ms. Brooks has been provided a fair opportunity to oppose GSK's Motion for Preliminary Injunction. GSK filed its Motion on February 11, 2022, and I issued the TRO on February 15, 2022. In the weeks and months that followed, I twice scheduled and twice cancelled a TRO/preliminary injunction hearing at Ms. Brooks's request. I also twice extended Ms. Brooks's deadline to respond to GSK's Motion and related filings in light of her counsel's yet undocumented illness. Ms. Brooks ignored those extended deadlines and instead filed a non-compliant Motion, ECF No. 26, one month after they had expired. Even then, in the Memorandum Opinion and Order dated May 6, 2022, I granted Ms. Brooks leave to refile portions of her stricken Motion so that she might defend herself against GSK's claims. ECF No. 31. That deadline expired on May 19, 2022, and the Court has not heard from Ms. Brooks, or her counsel, since.

Additionally, as explained in the Memorandum Opinion granting GSK's Motion for TRO, ECF No. 11, GSK presented a strong argument in support of its requested injunctive relief, which has only strengthened since it initially filed its Motion. To obtain a preliminary injunction, GSK must: (1) make a "clear showing" that it is likely to succeed on the merits; (2) show that it is likely to suffer irreparable harm absent the relief requested; (3) show that the requested preliminary

injunction is not counter to the public interest; and (4) demonstrate that the "balance of equities [] tip in [GSK's] favor." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7 , 20 (2008); *Real Truth About Obama, Inc. v. Fed. Election Comm'n,* 575 F.3d 342 , 347 (4th Cir. 2009).

> i.   *Likelihood of success on the merits*

GSK asserts four causes of action against Ms. Brooks: Count I – Misappropriation of Trade Secrets under 18 U.S.C. § 1831; Count II – Misappropriation of Trade Secrets under Maryland Code, § 11-201 of the Commercial Law Article; Count III – Conversion; and Count IV – Detinue/Replevin. ECF No. 1, Compl. All four causes of action arise out of the now-familiar allegations that Ms. Brooks resigned from her position at GSK and then took GSK confidential information and trade secrets, as well as a GSK-owned laptop, by copying such confidential documents to external storage devices and by emailing them to her personal email account. *Id.* GSK has supported its claims with detailed sworn affidavits from GSK's Vice President of Quality Audit and Compliance (ECF No. 1-1, Declaration of Allen Moss), and the consultant who conducted a forensic examination of Ms. Brooks's laptop (ECF No. 1-4, Declaration of Chad McDonald). GSK has also provided the Court with surveillance videos that appear to show Ms. Brooks leaving GSK's Rockville premises with a laptop. *Id.* Ms. Brooks has offered no evidence to refute GSK's claims except to baldly deny them during her February 22, 2022, deposition. What's more, Ms. Brooks attached a GSK document (which GSK claims is one of the very documents at issue in this case) to her now-stricken Motion at ECF No. 26. Finally, Ms. Brooks has refused to comply with the long-standing TRO, despite the fact that compliance with its instruction to provide proof that she does not have access to any GSK trade secrets or confidential information[1] would both support her denial of liability, and purge the ongoing order of contempt

---

[1] GSK has offered to fund the required analysis of Ms. Brooks's devices. *See* ECF No. 25-1.

against her. *See* ECF No. 32. Under those circumstances, I conclude, again, that GSK has made a clear showing that it is likely to succeed on the merits of its claims against Ms. Brooks.

      ii.      *Irreparable harm to GSK*

With respect to demonstrating irreparable harm to GSK, "Courts have recognized that the potential for the loss of trade secrets . . . demonstrates irreparable harm because a trade secret once lost is, of course, lost forever." *Teksystems, Inc. v. Spotswood*, No. CV RDB 05-1532 , 2005 WL 8174397, at *5 (D. Md . June 29 , 2005). The confidential information allegedly misappropriated by Ms. Brooks could have a potentially devastating impact on GSK's business in the hands of a competitor. And the resulting damages cannot begin to be quantified because its effects might be wide-ranging and permanent. For those reasons, I conclude, again, that GSK has sufficiently alleged a risk of irreparable harm in the absence of preliminary relief.

      iii.      *The public interest*

When an injunction will "adversely affect a public interest... the court may... withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312–13 (1982). In fact, "courts... should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* at 312.

Granting GSK the relief it seeks poses no obvious adverse consequences to the public. To the contrary, "the public interest favors the protection of trade secrets, and the prevention of unfair business practices." *Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 142 (D. Md. 2020). Accordingly, I conclude that GSK's requested preliminary injunction is in the public interest.

      iv.      *The balancing of equities*

Finally, the balance of equities must tip in favor of the movant in order for a preliminary

injunction to issue. *Winter*, 555 U.S. at 20. To make this determination, Courts must weigh any potential harm to the nonmoving party, the chance of harm to any interested person, and any potential harm to the public. *Continental Group Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 356–57 (3d Cir. 1980) (citing *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 924 (3d Cir. 1974)).

GSK asks in the main for its data and its physical property to be preserved, protected, and returned in one piece. Those demands cause no articulable injury to Ms. Brooks. And while I am mindful that GSK's request for Ms. Brooks to prove that she has complied with those demands by submitting the electronics and cloud-storage that for third-party examination implicates Ms. Brooks's privacy, the request is limited in scope to those devices used "to copy or transfer GSK Trade Secrets and Confidential Information," and I conclude that the intrusion does not outweigh GSK's interest in confirming that any misappropriated data has been removed from Ms. Brooks's personal accounts and devices. *Id.*

For those reasons, GSK's Motion for Preliminary Injunction, ECF No. 2, is GRANTED, and the Renewed Temporary Restraining Order, ECF No. 22, is hereby CONVERTED to a Preliminary Injunction.

**II.     Default judgment as to liability is entered in favor of GSK and against Ms. Brooks.**

Under Federal Rule of Civil Procedure 55(a) default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" Default judgment is left to the discretion of the court. *Choice Hotels Int'l., Inc. v. Jai Shree Navdurga, LLC*, Civil Action No. DKC 11-2893, 2012 WL 5995248, at *1 (D. Md. 2012). Although the Fourth Circuit has a "strong policy" that "cases be decided on their merits," *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002) (citing *United*

*States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), default judgment may be appropriate where a party is unresponsive, *see S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). In determining whether to enter default judgment, the Court takes as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

"The power to grant default judgment has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984). To that end, the First, Third, Fifth, Sixth, Seventh, and Ninth Circuits have all concluded that a district court may enter default judgment *sua sponte* without notice to the defaulting party. *See Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.,* 982 F.2d 686, 692–93 (1st Cir.1993) ( Fed.R.Civ.P. 55(b)(2) notice requirement does not apply where there is no motion for default pending and where the court has, on its own motion, found a party to be in default for a failure to appear); *Flaksa v. Little River Marine Const. Co.*, 389 F.2d 885, 887 (5th Cir. 1968) ("It is well established that the district court has the authority to dismiss or to enter default judgment, depending on which party is at fault, for failure to prosecute with reasonable diligence or to comply with its orders or rules of procedure. While the authority is reiterated in some of the Federal Rules of Civil Procedure for particular situations, the power is one inherent in the courts 'in the interest of the orderly administration of justice.' It may be exercised *sua sponte* under proper circumstances."); *Turner v. Whitehorn*, 205 F.3d 1342 (6th Cir. 1999) ("Initially, we note that a district court may *sua sponte* enter a default judgment under the circumstances of this case without providing prior notice to the defaulting party."); *Anilina*

*Fabrique de Colorants v. Aakash Chem. and Dyestuffs, Inc.*, 856 F.2d 873, 877 (7th Cir.1988) (notice requirement does not apply where district court entered default order on its own motion); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 916 (9th Cir. 1987) ("Courts have inherent equitable powers to dismiss actions or enter default judgments for failure to prosecute, contempt of court, or abusive litigation practices."). And although the Fourth Circuit does not appear to have weighed in on this issue, at least two district courts within this Circuit have found it appropriate to enter default judgment on their own motion when a party has failed to participate in a case and "failed to comply with the court's orders and rules of procedure." *Grayson Consulting, Inc. v. Cathcart*, No. 2:07-CV-02992-DCN, 2014 WL 12741070, at *1 (D.S.C. Apr. 16, 2014); *Guardian Life Ins. Co. of Am. v. Spencer*, No. 5:10CV00004, 2011 WL 39089, at *1 (W.D. Va. Jan. 5, 2011) (citing *Flaksa,* 389 F.2d at 887).[2]

In light of the above-summarized authority, and in view of Ms. Brooks's failure to defend in this case, I find that it is appropriate to enter default judgment as to liability in favor of GSK and against Ms. Brooks. The same facts contained in GSK's Complaint (and the exhibits thereto) that supported entering a TRO, and that support converting the TRO into a preliminary injunction, also support a finding of liability on all four Counts of the Complaint. *See* Section I, above; ECF No. 31; ECF No. 11; ECF No. 1. On the current record, however, it is not appropriate to enter default for GSK with respect to damages. *See Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (citing *Ryan*, 253 F.3d at 780–81). Instead, consistent with the allegations of the Complaint, GSK may file a motion for damages in an amount to be determined at arbitration, and such other

---

[2] *See also* Fed. R. Civ. P. 16(f); *Mendelsohn, Drucker, & Assocs., P.C. v. Titan Atlas Mfg., Inc.*, No. CIV.A. 12-0453, 2013 WL 1842124, at *4 (E.D. Pa. May 2, 2013) ("The inherent power of district courts to levy sanctions in response to abusive litigation practices includes the power to grant default judgment.") (citations omitted).

damages that it alleges it is entitled to in its Complaint.³ *Id.*; *Amerifactors Fin. Grp., LLC v. PHD Tech. Sols., LLC*, No. CV RDB-19-0207, 2019 WL 2579349, at *2 (D. Md. June 24, 2019) (stating that a court need not conduct a hearing on damages but "may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum."); *see also* Fed. R. Civ. P. 55(b). GSK's motion for damages shall be filed within 30 days of the conclusion of arbitration, or within 30 days of the date of this Memorandum Opinion and Order, whichever is later.

## CONCLUSION

For the reasons identified in this Memorandum Opinion, GSK's Motion for Preliminary Injunction, ECF No. 2, is GRANTED and default judgment shall be entered in favor of GSK and against Ms. Brooks as to Ms. Brooks's liability. GSK may file a supplemental motion for damages within 30 days of the conclusion of arbitration, or within 30 days of the date of this Memorandum Opinion and Order, whichever is later.

## ORDER

For the reasons outlined in the foregoing Memorandum Opinion, it is hereby ORDERED that:

1. GSK's Motion for Preliminary Injunction, ECF No. 2 is GRANTED and the Renewed Temporary Restraining Order is CONVERTED to a Preliminary Injunction, which will issue separately;

2. GSK's Expedited Emergency Motion for Discovery, ECF No. 3, is DENIED AS MOOT;

3. Default judgment IS ENTERED as to liability in favor of GSK and against Denise Brooks;

---

³     *See* Compl. ¶¶ 61–63; 74–76; 84.

4. GSK may file a supplemental motion for damages within 30 days of the conclusion of arbitration or the date of this Memorandum Opinion and Order, whichever is later.

Dated: July 25, 2022

/S/
Paul W. Grimm
United States District Judge